## WILLIS v. STATE INDUSTRIAL COMMISSION et al.

No. 10816—Opinion Filed March 30, 1920.

Rehearing Denied May 18, 1920.

(Syllabus by the Court.)

1. **Master and Servant—Workmen's Compensation—Injury "Arising Out of and in Course of Employment."**

Where an employe, during an interval in his work was warming himself by a fire on the premises of the employer, and was injured by the explosion of a piece of dynamite containing a cap, brought there and thrown into the fire by a fellow employe, who picked up the dynamite and threw it into the fire to see if it would explode, the injury received by the employe arose out of and in the course of his employment, under the Workmen's Compensation Law.

2. **Same—Order of Industrial Commission—Reversal.**

On review, the order of the Industrial Commission denying compensation is reversed and the cause remanded, with directions.

Higgins, Pitchford, and Bailey, JJ., dissenting.

Action to review decision of State Industrial Commission refusing compensation for personal injuries to Lon Willis. Reversed and remanded.

E. W. Smith, for petitioner.

Hummer & Foster, for respondents.

JOHNSON, J. This action was commenced in this court on the 9th day of August, 1919, for the purpose of reviewing a decision of the State Industrial Commission rendered on the 14th day of July, 1919, wherein the petitioner was denied compensation under the Workmen's Compensation Act (chapter 246, Session Laws 1915).

The findings of the commission were as follows:

"The facts in this case agreed upon are as follows: It is agreed between the claimant and respondent, Alko Nak Coal Mining Company and Coal Operator's Exchange, that on the 18th day of February, 1919, the employes of the Alko Nak Coal Mining Company had been accustomed, during the hours of their service, when not actually engaged in their work, to stand by a fire that was kept on the premises, with the knowledge and acquiescence of the company, for the purpose of providing a place where they could be comfortable while not actually engaged at work, and such fire was had with the permission of the company.

"The facts further show that claimant and three other workmen on February 18, 1919, were warming by the fire at an interval in their work and were not actually working at that particular time, but were on the payroll and their time was going on. A fellow employe came along where they were warming around the fire and threw a piece of split dynamite in the fire. When the dynamite was thrown into the fire the fellow servants, after being warned, all ran away, except claimant, who had his shoe off trimming a corn. Claimant saw an old piece of dynamite, but not the cap. The fire was on the premises of the company where claimant was working. Claimant's daily wage was $5.40."

After the foregoing findings of fact, the commission made the following order, to wit:

"Now on this July 14th, 1919, this cause coming on to be heard in its regular order pursuant to a hearing held in Henryetta on June 12th, 1919, at which hearing the claimant was present in person and by his attorney, E. W. Smith of Henryetta, and respondent and insurance carrier, by their attor-

neys, Hummer and Foster of Henryetta, and the commission after examining the testimony, briefs of counsel, filed in the case, and being otherwise well and sufficiently advised in the premises, finds that the injury complained of did not arise out of and in the course of his employment with respondent, and that compensation should be denied.

"It Is Ordered: That compensation in the above claim be denied."

The commission further finds:

"That the injury did not arise out of and in the course of his employment, and that compensation should be denied."

Petitioner makes the following assignments of error:

"(1) That the commission erred in holding that the injury complained of did not arise out of and in the course of the employment of the petitioner.

"(2) That said award or decision is contrary to law.

"(3) That said award or decision is not supported by the evidence and is contrary to the evidence."

And then states in his brief as follows:

"While there are three assignments of error in the petition filed herein by the petitioner, it is our purpose to treat them all under the first assignment, which fairly covers the entire objection to the ruling of the commission.

"(1) That the commission erred in holding that the injury complained of did not arise out of and in the course of the employment of the petitioner."

It is provided by section 1, art. 2, of the Workmen's Compensation Act (chapter 246, Session Laws 1915) that:

"Every employer subject to the provisions of this act shall pay or provide as required by this act, compensation according to the schedules of this article for the disability of his employe, resulting from an accidental personal injury sustained by the employe 'arising out of and in the course of his employment,' without regard to fault as a cause of such injury, except where the injury is occasioned by the willful intention of the injured employe to bring about the injury of himself or another, or where the injury results directly from the willful failure of the injured employe to use a guard or protection against accident furnished for his use pursuant to any statute or order of the State Labor Commissioner, or results directly from the intoxication of the injured employe while on duty."

It is also provided by section 11, art. 2, of the Workmen's Compensation Act (chapter 246, Session Laws 1915) that:

"In any proceeding for the enforcement of a claim under this act, it shall be presumed in the absence of substantial evidence to the contrary:

"(1) That the claim comes within the provisions of this act."

We agree with counsel for respondents that the words "arising out of" and "in the course of employment" are conjunctive, and relief can be had under the act only when the accident arose both "out of" and "in the course of" employment.

From the facts found by the commission— that the petitioner, "during an interval in his work, was warming himself by a fire on the premises of the employer, and was injured by the explosion of a piece of dynamite containing a cap, brought there and thrown into the fire by a fellow employe who picked up the dynamite and threw it into the fire to see if it would explode," upon the facts thus found the commission concludes, as a matter of law, "the injury received by the employe did not arise out of and in the course of his employment under the Workmen's Compensation law."

Counsel for the respondents say in their brief:

"We shall brief this case under the following proposition of law: The injury to the petitioner, as set forth in the above statement of facts, was not an accidental injury sustained by the employe arising out of and in the course of his employment.

"The petitioner urges in his brief that, since it was not shown that he was intoxicated, or failed to use any safeguard provided for his safety, or that he brought his injury about willfully, the respondents are liable to him for compensation, as he was where he had a right to be. Of course, if this were a true statement of the law, there would be no defense to this case, for it is not contended by the respondents that the petitioner was not in the employ of the company or that he was in a place where he had no right to be, but it is sufficient, under the many decisions of the various Supreme Courts and commissions construing the provision 'out of and in the course of employment,' that the injury be received while the employe was working for his employer. This is probably sufficient to warrant the statement that the injury was received while in the course of his employment, but does not come within the provision, 'arising out of the employment' It is held by practically all of the decisions that the words 'arising out of' and 'in the course of' employment are conjunctive, and relief can be had under the act only when the accident arose both 'out of' and 'in the course of' employment. The injury must be received (1) while the workman is doing the duty he is employed to perform; and also (2) as a natural incident of the work. It must be one of the risks connected with the employment,

flowing therefrom as a natural consequence, and directly connected with the work."

These clear statements by counsel for respondents of their position very greatly simplify the case; it being admitted that the petitioner was an employe of the company and that he was in a place where he had a right to be and that the injury was received while in the course of his employment, leaves the only question to be determined, Did his injuries come within the provision, "arising out of the employment"?

In Honnold on Workmen's Compensation, vol. 1, sec. 101, in discussing the question here involved, it is said:

"According to the usual language of the acts, to warrant recovery of compensation for the injury or death of a workman, the injury must be one 'arising out of and in the course of' his employment. This phrase is used in the same sense in the acts of England and of many of the states, and, though its literary construction is well settled, its application to particular cases has given rise to differences of opinion not easily harmonized. Attempts of the courts to formulate general rules relative to the distinction between the terms 'out of' and 'in the course of' have not been entirely successful. All agree, however, that the terms are not intended to be synonymous. An injury may be received in the course of employment, and still have no causal connection with it, so that it can be said to arise out of the employment. But it is difficult, if not impossible, to conceive of an injury arising out of and not also in the course of the employment. The importance of distinguishing between these terms arises from the fact that each represents an element essential to, but not authorizing recovery of compensation without the presence of the element represented by the other. In other words, even though the injury occurred 'in the course of' the employment, if it did not arise 'out of the employment' there can be no recovery. Yet, in the words of an English jurist: 'If you find that the accident arose in the course of the employment, you may have gone a certain way towards finding that it arose out of the employment, but you have not gone the whole way.' The words 'out of' point to the origin and cause of the accident or injury, the words 'in the course of' to the time, place and circumstances under which the accident or injury takes place. The former words are descriptive of the character or quality of the accident; the latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words 'out of' involves the idea that the accident is in some sense due to the employment. It must result from a risk reasonably incident to the employment."

If it be as stated in the text quoted supra, that "the words 'out of' point to the origin and cause of the accident or injury," and the

commission having found that the injury was caused by a fellow employe, and it being admitted that the petitioner was an employe and was where he had a right to be, it seems to us that it necessarily follows that the accident was due to the employment and resulted from a risk reasonably incident to the employment.

The author cites in support of the text the decisions of the cases of Bryant v. Fissell, 84 N. J. Law, 72, 86 Atl. 458; Buckley, L. J., in Fitzgerald v. Clark & Son, 2 K. B. 796; Hulley v. Moosbrugger, 87 N. J. Law, 103, 93 Atl. 79; Zabriskie v. Erie R. Co., 85 N. J. Law, 157, 88 Atl. 824; Terlecki v. Strauss, 85 N. J. Law, 454, 89 Atl. 1023; Armitage v. Lancashire & Yorkshire R. Co., 2 K. B. 178; Collins v. Collins, 2 I. R. 104; Murphy v. Berwick, Ir. I. T. R. 126; Blake v. Head, 106 L. T. R. 822. In the case of Scott v. Payne Bros., 85 N. J. Law, 446, 89 Atl. 927. it was said:

"An injury arises out of and in the course of employment where at the time and place of its occurrence the workman is doing what he might reasonably then do."

To the same effect was the holding of the Supreme Court of Kansas in the cases of Thomas v. Proctor & Gamble Mfg. Co., 179 Pac. 372; N. W. Iron Co. v. Industrial Commission et al. (Wis.) 152 N. W. 416; Writing-Mead Commercial Co. v. Indus. Accident Com. (Cal.) 173 Pac. 1105. This court. in the case of Wick et al. v. Gunn et al., 66 Oklahoma, 169 Pac. 1087, in an opinion by Stewart. C., said in paragraph 1 of the syllabus thereof:

"The Workmen's Compensation Act of this state (Laws 1915, chapter 246) must be construed as a whole, and all presumptions indulged will be in favor of those for whose protection the statutory compensation was fixed, and, who, by the terms of the act, are deprived of the ordinary remedies open to others whose rights are invaded."

Such was the holding of this court in the case of Adams v. Iten Biscuit Co., 63 Oklahoma, 162 Pac. 938.

We think the correct rule is, and so hold in these cases, that if a workman is an active participant in what has been denominated "horse-play," he is not entitled to compensation, but if, while going about his duties he is a victim of another's prank, to which he is not in the least a party, he should not be denied compensation. 53 Am. Law Rev., p. 75.

We are of the opinion that the conclusion reached by the commission was erroneous, and the cause is therefore reversed and remanded, with directions to proceed in accordance with the views herein expressed.

OWEN, C. J., and KANE, RAINEY, and McNEILL, JJ., concur. PITCHFORD, HIGGINS, and BAILEY, JJ., dissent in an opinion by HIGGINS, J.

———

Dissenting Opinion Filed April 20, 1920.

HIGGINS, J. (dissenting). I dissent from the opinion of the majority in the application of the law to the facts in this case. I do not question but that the injury in the instant case to the employe was in the course of his employment, but I do not believe from the facts and circumstances of the case that it arises out of his employment. As to an injury to an employe arising out of his employment, Honnold, at section 115, states as follows:

"The use of the words 'arising out of,' or words of similar import, makes it a condition precedent to the right to recover compensation that the occurrence shall have resulted from a risk reasonably incident to the employment; that there be causal connection between the conditions under which the employe worked and the resulting injury. While the occurrence need not have been foreseen or anticipated, it must appear after the event to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In this case there is no contention in the briefs or finding in the opinion of the majority that there was a connection between the throwing of a piece of dynamite into the fire, which caused the injury, and the work being done there by the party injured or by his fellow workman who threw the dynamite into the fire. The opinion of the majority is in error in citing Hulley v. Moosbrugger, 87 N. J. Law, 103, 93 Atl. 79, for the reason the opinion in that case is overruled and reversed in the same court at a later date, 88 N. J. Law, 161, 95 Atl. 1007, L. R. A. 1916C, 1203. That was a case in which it was claimed that the injury suffered arose out of the employment, and it goes into detail as to when an injury arises out of the employment, and is as follows:

"It 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it 'arises out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Applying this law to the facts of the instant case, where is the causal connection between the throwing of the piece of dynamite into the fire and the work being done and the party injured? Was the throwing of the piece of dynamite into the fire a natural incident of the work? Would the injured party have been equally exposed to this hazard apart from his employment? Was the causative danger, that is, of throwing the dynamite into the fire, peculiar to the work and not common to the neighborhood? Was it incidental to the character of the business and dependent on the relation of master and servant? Did the throwing of the dynamite into the fire have its origin in the risk connected with the employment or flow from that source as a rational consequence? If so, compensation should be allowed; if not, it should be refused. In my judgment the resulting injury from the throwing of dynamite into the fire by a fellow workman, in play, is not an injury arising out of the employment. The throwing of the dynamite into the fire was not a natural incident to the risk, neither was it peculiar thereto. It is stated in the opinion as a reason why petitioner should recover:

"If it be as stated in the text quoted supra, 'that the words "out of" point to the origin and cause of the accident or injury,' and the commission having found that the injury was caused by a fellow employe, and it being admitted that the petitioner was an employe and was where he had a right to be, it seems to us that it necessarily follows that the accident was due to the employment and resulted from a risk reasonably incident to the employment."

If this be a correct doctrine, then an employer becomes an insurer if his servant is at a place he has a right to be when injured and is injured by a fellow servant, regardless of what may have caused the injury, for the reason that it is stated that when these two conditions exist, then it necessarily follows that the accident arises out of the employment and from a risk reasonably incident to the same. I do not believe this is sound reason or correct law. It merely goes

a portion of the way. It leaves out the question whether or not the injury arises out of the employment, which is the only issue to be tried in this case. Neither in the briefs nor in the opinion of the majority is there any contention that the throwing of the dynamite into the fire had any connection with the work being done. It was totally foreign to same. The throwing of the same into the fire was merely a prank of a fellow employe, commonly called horseplay or skylarking.

Whether or not an employe can recover for an injury brought about through a joke, horseplay, prank, or skylarking of a fellow employe is set forth in section 121, Honnold:

"Unless the workman is actually engaged at the particular time in the performance of some duty which contributes to the injury, an injury to a workman from skylarking or horseplay or practical joking, though it may arise in the course of, cannot be said to arise out of, the employment, whether the injured person instigated the occurrence or took no part in it."

It will thus be seen that the general rule is that recovery cannot be had for an injury brought about by skylarking or horseplay of a fellow employe. There are many opinions upholding this doctrine, too numerous to mention. The footnotes of Honnold cite many.

Where an employe, who was peculiarly susceptible to being tickled, was going down a flight of stairs with a filled bucket and one of his associates punched him in the back with a newspaper, causing him to make a sudden movement and to fall, injuring one knee seriously, it was held that the injury was in the course of, but did not arise out of, his employment. (Coronado Beach Co. v. Pillsbury (Cal.) 158 Pac. 212)

A fellow employe directed a trick camera toward the claimant and a missile from the camera hit him in the eye and the sight of the eye was destroyed. It was held that the injury did not arise out of the employment. (Fishering v. Pillsbury, 172 Cal. 690, 158 Pac. 215.)

An injury from a stream of hot water turned on an employe by a fellow employe as a practical joke was held not to arise out of the employment. (Vittorio v. California Battery Co., 3 Cal. Industrial Commission, 26.)

Our laws relating to workman's compensation are similar to the New York statute. Laurino v. Donovan et al., 170 N. Y. Supp. 340, 183 App. Div. 168, is a case very similar to this case. In that case a fellow employe injured another by the explosion of a percussion cap with which he was experimenting. The court held:

"Where a chauffeur, doing his master's work in a garage, was injured by the explosion of a percussion cap brought in by another chauffeur, his fellow servant, with which the latter was experimenting, the injury to the first chauffeur did not arise out of his employment within the Workman's Compensation Law to entitle him to an award."

The authorities on this point are collected in review in Ann. Cas. 1913C 1; 1914B 498; 1915B 1293; 1917C 760; 1918B 768; and 1918E 1164. In the many cases cited in the opinion of the majority none hold to the contrary of this general rule, but it is held in some that there may be circumstances which will take it out of the general rule; for instance, in the case of Thomas, v. Proctor, cited. Therein a girl employe was riding upon a truck and fell therefrom and was injured. The riding upon the truck seems to have been in play. The custom of riding this truck at the noon hour was within the knowledge and with the express consent of the foreman, and, the court found, was one of the conditions upon which the business was carried on, and for that reason the case did not fall within the general rule, though the girl was injured while at play. It has been further held that where horseplay has grown into a custom and to the knowledge of the employer, he may be held liable for injury resulting therefrom. White v. Stockyards (Kan.) 177 Pac. 522. In all these cases cited there is some circumstance connected with the injury which took the case without the general rule. There is no case cited, in which there was no circumstance taking the case out of the general rule, in which the courts have ever held that an employe can recover where the injury is by a fellow employe while engaged in horseplay or skylarking.

In this case there are no circumstances of any kind whatsoever taking the case out of the general rule. It was a prank of a fellow employe, commonly called horseplay or skylarking, pure and simple, and nothing else; and for that reason, and in keeping with the authorities above cited as I understand them, I do not believe that the petitioner should recover in this case.

In the opinion of the majority there is laid down as a principle of law that if one is the victim of the prank of a fellow employe to which he, the injured employe, is not a party, that he should be allowed compensation. To fortify this principle there are two authorities cited. An examination of the

Maryland case throws no light upon the subject whatsoever, as there is no contention in that case that the employe was injured by a prank of another employe. The other, 53 Amer. Law Review, page 75, is a quotation from a paper prepared by the Commissioner of the Workmen's Compensation Board of the Province of Ontario and read at an international meeting of industrial boards at Madison, Wisconsin, in which the writer stated:

"Our board in Ontario has adopted the rule in these cases if while he (the injured party) is going about his duties he is the victim of another's pranks to which he is not in the least a party, we do not deny him compensation."

This paper states that a board—not a court—has adopted a rule—not construed law—that an employe is not denied compensation if injured by the prank of a fellow employe if he, the injured employe, is not a party to the prank.

There is to the contrary of this principle Section 121 of Honnold on Workmen's Compensation, above cited in this opinion, to the effect that if the injured party was injured by horseplay or prank of a fellow workman, he cannot recover even though he took no part in it. In Hully v. Moosbrugger, 88 N. J. Law, 161, 95 Atl. 1007, L. R. A. 1916C, 1203, this identical issue was passed upon, the court holding:

"An employer is not liable, under the Workmen's Compensation Act, to make compensation for injury to an employe which was the result of horseplay or skylarking, so called, whether the injured or deceased party instigated the occurrence or took no part in it; for, while an accident happening in such circumstances may arise in the course of, it cannot be said to arise out of the employment."

Similar holdings are made in the following cases: Knopp v. Amer. Car Co., 186 Ill. App. 605; De Filippis v. Falkenberg, 155 N. Y. Supp. 761.

I do not believe that this principle of law that a fellow workman may recover if an injury is caused by the prank of a fellow workman if he, the injured party, was not a party to the prank, is upheld by the weight of judicial decision; but all appellate courts speaking thereon, as far as I have been able to find, have spoken to the contrary. I believe that the opinion of the majority in this case gives no meaning to that part of the statute which states that the injury must arise out of the employment.

I am authorized to state that PITCHFORD and BAILEY, JJ., concur in this dissenting opinion.